# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**UNITED STATES OF AMERICA,**

 Plaintiff,

 v.               Case No. 17-CR-189

**DOMINIQUE D. CARR,**

 Defendant.

---

### RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS

---

 On November 7, 2017, a grand jury sitting in the Eastern District of Wisconsin returned a three count indictment against Dominique Carr charging him with possession of a firearm as a previously convicted felon, possession with intent to distribute marijuana, and with possession of a firearm in furtherance of a drug trafficking offense. (Docket # 1.) A jury trial before the Honorable Pamela Pepper is adjourned pending resolution of pretrial motions.

 Before me is Carr's motion to suppress evidence obtained as a result of an allegedly unlawful search of his vehicle by Milwaukee police officers on August 3, 2017. (Docket # 10.) Officer Fuerte, while investigating Carr's vehicle for allegedly having excessively tinted windows, asserts that he viewed a jar on the passenger seat of the vehicle containing marijuana. Carr argues that Officer Fuerte's claim cannot justify the search of the car because Officer Fuerte could not have seen marijuana in the jar; rather, he only guessed about the jar's contents. I conducted an evidentiary hearing and the parties briefed the motion. For the reasons that follow, I recommend that Carr's motion to suppress be denied.

# FACTS

On the night of August 3, 2017, four Milwaukee police officers, Eric Brandt, Mark Staszewski, Mathew Jackson, and Andrew Fuerte, were on bike patrol in the vicinity of 2620 West Capitol Drive in Milwaukee. (January 11, 2018 Transcript of Evidentiary Hearing ("Tr."), Docket # 24 at 32, 34.) All four officers testified at the evidentiary hearing held on January 11, 2018. Officer Jesse Busshardt also testified at the hearing. Because he was not present at the scene during the relevant time period (Tr. 29), I will not address his testimony. Also, defense investigator David Janisch testified at the January 22, 2018 hearing. Although he also was not present on the scene, because Carr relies on his testimony, his testimony is also summarized.

*Officer Andrew Fuerte*

Officer Andrew Fuerte has been a police officer with the Milwaukee Police Department for approximately four and one half years. (Tr. 69.) On August 3, 2017, Officer Fuerte was working the early shift from 4:00 p.m. to midnight. (*Id.*) While on routine bicycle patrol of the area, Officer Fuerte went to the area of 2620 West Capitol Drive. (Tr. 70.) Officer Fuerte was on patrol with Officers Brandt, Staszewski and Jackson. (*Id.*) Officer Fuerte testified they were patrolling due to the fact it was a high crime area. (*Id.*)

The officers arrived at 2620 West Capitol around 9:45 p.m. and saw a vehicle parked at the gas pump with tinted windows and approached the vehicle. (Tr. 70-71.) Officer Fuerte testified that Officer Staszewski was at the rear of the vehicle (Tr. 75) and Officer Brandt was just north of Officer Fuerte, (Tr. 76). Officer Fuerte was on the front passenger quarter panel of the vehicle, "basically touching the vehicle," when he observed a clear glass jar on the front passenger seat that contained suspected marijuana. (Tr. 72, 80.) Officer Fuerte was

2

using his flashlight to illuminate the inside of the vehicle. (*Id.*) Officer Fuerte also believed there was some interior light located inside of the vehicle that was also on at the time that enabled him to view the suspected marijuana in the jar (Tr. 82); however, on redirect, he testified that the lights were not on inside the car because the doors were closed, (Tr. 122). Officer Fuerte also observed a cell phone lying next to the glass jar. (Tr. 82.)

Officer Fuerte initially testified that the lighting underneath the canopy of the gas station did not illuminate the interior of the vehicle based on how the vehicle was parked (Tr. 135); however, after viewing a photograph depicting lighting on the back of the seats, Officer Fuerte then testified that the lightening from the gas station's canopy helped illuminate the inside of the vehicle (Tr. 136).

Officer Fuerte described that he remained on his bicycle with his body facing forward and turned his head and looked backwards into the interior of Carr's vehicle. (Tr. 112.) Officer Fuerte (who is right-handed) used his left hand to hold his flashlight. (*Id.*) Officer Fuerte further explained that when he said he looked "backwards" he meant that he "turned kinda to the side to be able to look through the windshield. I wasn't fully turned around but enough to be able to look into the front windshield." (Tr. 124.) Officer Fuerte testified that the front windshield of the vehicle was untinted, but the rest of the vehicle was tinted. (Tr. 93.) He stated that he had to look into the vehicle this way because of the window tint on the side windows. (Tr. 125.)

Officer Fuerte testified that he peered into the front passenger's side windshield area and advised Officer Brandt of what he observed (Tr. 78.) Officer Fuerte stated he also advised Officer Jackson by pointing to him and gesturing to have Carr step out of the vehicle. (*Id.*) Officer Fuerte said that the gesture to Officer Jackson came within seconds of

observing the jar. (Tr. 79.) Officer Fuerte testified that when he gave the gesture to Officer Jackson, Carr was already outside of the vehicle. (Tr. 79.) Officer Fuerte later testified that when he signaled to Officer Jackson, the vehicle's door simultaneously opened and Carr stepped out of the vehicle. (Tr. 90.) Officer Fuerte eventually entered the vehicle and observed the jar with the suspected marijuana on the front passenger seat and a loaded firearm in the center console. (Tr. 80.)

Officer Fuerte was concerned that no one was exiting or entering the vehicle because in his experience, many times individuals will sell drugs from their vehicle and not exit or enter and it will be done rather quickly. (Tr. 92-93.) Officer Fuerte testified that the excessively tinted windows concerned him as well because he could not see into the vehicle. (Tr. 93-94.)

Officer Fuerte testified that the jar contained one baggie and within that baggie there were two additional baggies. (Tr. 118.) One of the baggies had about a gram of a plant-like substance in it and the other one had twenty baggies inside as well as plant-like material. (Tr. 119.) The baggies were fold-over sandwich bags. (*Id.*) Officer Fuerte testified that he was able to observe the plant-like substance from his vantage point (looking into the front windshield) and that the baggies were not intrusive. (Tr. 119-120.) Specifically, he was able to observe a green leafy substance in the jar. (Tr. 126.) Officer Fuerte stated that he did not smell marijuana. (Tr. 121.) Officer Fuerte testified that from his experience, he has encountered marijuana "encased in that fashion" on multiple occasions. (Tr. 127.)

*Officer Mathew Jackson*

Officer Mathew Jackson has been a police officer with the Milwaukee Police Department for four years. (Tr. 148.) On August 3, 2017, Officer Jackson was working the

"late power shift" from 7 p.m. to 3 a.m. (*Id.*) Officer Jackson was assigned to the bicycle unit on that night with Officers Staszewski, Brandt, and Fuerte. (*Id.*) Officer Jackson testified that around 9:44 p.m. he was in the 2600 block of West Capitol Drive with the other officers on routine patrol as the area is a high crime area. (Tr. 149.)

As Officer Jackson reached that location, his attention was drawn to a vehicle parked at a gas pump with windows that appeared to be "pretty darkly tinted." (Tr. 150.) Officer Jackson approached the vehicle on his bicycle and rested his foot up against the gas pump. (Tr. 153.) Officer Jackson testified that Officers Fuerte and Brandt rode their bicycles to the passenger side of the vehicle. (Tr. 154.) Officer Jackson recalled observing Officer Fuerte looking through the front windshield of the vehicle. (Tr. 155.) Officer Fuerte had a flashlight in his hand. (*Id.*) Officer Jackson testified that at the time Carr's vehicle door was open, he had not received any commands from Officer Fuerte. (Tr. 157-58.) Officer Jackson testified that the door opened and he spoke with Carr. (Tr. 158.)

Officer Jackson stated that Carr was partially out of the vehicle when Officer Fuerte gestured to him. (Tr. 159-60.) Officer Jackson said that Officer Fuerte made a motion with his hand, which Officer Jackson understood meant to have Carr step out of the vehicle. (Tr. 160.) Officer Jackson then advised Carr to step out of the vehicle, and Carr complied. (Tr. 161.) Officer Jackson testified that Officer Fuerte was positioned on the northeast side of the vehicle and Officer Brandt was located to Officer Fuerte's right. (Tr. 162.) Officer Staszewski was positioned at the rear of the vehicle. (*Id.*)

Officer Jackson testified that after Carr exited the vehicle, Officer Jackson instructed him to start walking towards the rear of the vehicle. (Tr. 164.) Carr initially complied (*id.*),

5

but ultimately Carr fled on foot and Officer Jackson jumped back onto his bicycle to pursue him (Tr. 165).

*Officer Mark Staszewski*

Officer Mark Staszewski has been a police officer with the Milwaukee Police Department for approximately four years. (Tr. 31-32.) On the night of August 3, 2017, Officer Staszewski was assigned to the bicycle unit, which is tasked with performing patrol duties in various areas of the district. (Tr. 32.) Officer Staszewski was on patrol that night with Officers Brandt, Jackson, and Fuerte. (Tr. 34.) The officers were not designated to a specific call that night; rather, they were on patrol as the area is known as a high crime area. (Tr. 33.) Officer Staszewski testified that they were not called to any specific location and were not looking for Carr or anyone who looked like him. (Tr. 51.)

Officer Staszewski testified that the officers were heading south from 27th Street and Atkinson Avenue and were stopped at the red light going southbound on 27th Street at Capitol Drive. (Tr. 34.) Officer Staszewski stated that they observed a vehicle sitting in the gas station for the duration of a red light and did not see anyone get in or out of the vehicle. (Tr. 34-35.) Thus, the officers rode their bikes "over in the vicinity of that vehicle." (Tr. 35.)

Officer Staszewski testified that from past experience in a high crime area, when a vehicle sits for a duration of time at a gas pump with no one pumping gas, the officers want to "look[ ] to see if everything was okay with that vehicle, if anything was going on with that vehicle." (*Id.*) Officer Staszewski said that at the time the officer initially approached the vehicle, Officer Jackson was next to a pump on the driver's side of the vehicle, and Officers Fuerte and Brandt were near the front passenger side of the vehicle. (Tr. 36.) Officer

Staszewski made a circle with his bicycle in the parking spot next to the vehicle and then came back to the rear of the vehicle where he ended up stopping. (*Id.*)

Officer Staszewski was approximately 10-15 feet from the vehicle but could not recall hearing any conversation. (Tr. 39-40.) Officer Staszewski testified that Officer Fuerte was looking into the windshield of the vehicle and the driver's door of the vehicle was opening. (Tr. 41.) Officer Staszewski testified that Officer Fuerte backed up from looking into the vehicle and spoke to Officer Jackson. (Tr. 43.) Officer Staszewski rode his bicycle north and was planning on circling around and come back to the rear of the vehicle. (Tr. 44.) Officer Staszewski planned on radioing dispatch to broadcast their location. (Tr. 44-45.) At this point, Officer Jackson was behind Officer Staszewski and was getting off of his bicycle and Carr was in the driver's seat of the vehicle with the door open. (Tr. 45.)

Officer Staszewski recalled seeing Officer Fuerte give a "thumbs up" before Carr exited the vehicle. (Tr. 46, 49.) Officer Staszewski testified that from working with Officer Fuerte, he understood this to mean that either Officer Fuerte saw something or wanted to speak to Carr. (Tr. 49.) Officer Staszewski also recalled seeing Officer Fuerte with a flashlight in his hand that he used to illuminate the inside of the vehicle. (*Id.*) Officer Staszewski testified that he could see the light illuminating the inside of the vehicle. (*Id.*)

*Officer Eric Brandt*

Officer Eric Brandt has been a police officer with the Milwaukee Police Department for just over three and one half years. (Tr. 54.) On the night of August 3, 2017, Officer Brandt was assigned to bicycle patrol with Officers Fuerte, Staszewski, and Jackson. (Tr. 55.) Officer Brandt testified that around 9:44 p.m. that day, the officers had occasion to go to 2620 West Capitol Drive. (*Id.*) They were on patrol and road into the parking lot of the

7

gas station located at that address and approached a motor vehicle that was parked at a gas pump. (Tr. 56.)

Officer Brandt observed Officer Fuerte near the front passenger door of the vehicle and saw him looking through the windshield at the interior of the vehicle. (Tr. 57.) Officer Brandt was in front of the vehicle just off to the passenger side. (Tr. 58.) He observed that Officer Fuerte had a flashlight in his hand and that Officer Jackson was speaking to the driver of the vehicle, who he later learned was Carr. (Tr. 58-59.)

Officer Brandt testified that Officer Fuerte looked through the front windshield of the vehicle and then looked at Officer Jackson and gave him some sort of hand indication to have Carr step out of the vehicle. (Tr. 63.) Officer Brandt testified that at the point in time in which he saw Officer Fuerte give the hand signal to Officer Jackson, Carr had already opened the vehicle's door on his own and Officer Jackson was speaking with him. (*Id.*) Officer Brandt did not see the jar found on the passenger seat and did not smell marijuana. (Tr. 68.)

*David Janisch*

Janisch is an investigator and former police officer for the Cities of Waukesha and Viroqua. (Tr. 9:22:49-9:23:12.)[1] Janisch was retained by the Federal Defender Services of Wisconsin to assist in Carr's case. (Tr. 9:23:47-52.) Specifically, he was hired to review the police reports and any recordings they had and to re-create the scene where Carr had been approached by officers. (Tr. 9:23:55-9:24:17.) Janisch testified that he was not present on the night of August 3, 2017; however, he went to 2620 West Capitol Drive on January 18, 2018 at 5:30 p.m. and it was dark at that time. (Tr. 9:24:26-9:24-51.) Carr brought his grey Honda Accord to the scene, which appeared to Janisch to be the same vehicle seen in the discovery

---
[1] I cite to the audio recording of the January 22, 2018 hearing.

materials. (Tr. 9:24:56-9:25:10.) The vehicle was parked next to pump four, which Janisch testified based on his viewing of the officers' body camera footage, was the same location the vehicle was parked on the night of August 3, 2017. (9:25:12-9:25:43.)

Janisch testified that he had put together a reasonable facsimile of the items recovered from Carr's vehicle and on January 18, 2018 while at 2620 West Capitol Drive, he placed the glass jar on Carr's front passenger side seat and took video of the area and of Carr's vehicle, and video from the vantage point of where Officer Fuerte had been standing when he made his observations. Janisch also took photographs. (Tr. 9:26-42-9:27:42.) Janisch testified that the jar he used in his recreation was four inches tall and was similar to the jar seen in Government's Exhibit 27 and Defense Exhibit B, which depict the jar found in Carr's vehicle the night of August 3, 2017. (Tr. 9:28:11-9:29:52.)

Janisch testified that after reviewing the police reports he learned that there had been a sandwich-type clear plastic bag in the jar that contained twenty corner-cuts of plastic bags that were knotted at the top that contained green vegetable material. Janisch testified that for his recreation, he packaged twenty bags in a similar fashion using parsley flakes and packaged a separate corner-cut containing parsley flakes and placed the items into a clear plastic sandwich-type bag. Janisch summarized that inside of the one plastic bag there was a sandwich bag containing twenty corner-cuts and one separate corner-cut, for a total of twenty-three plastic bags inside the jar. Janisch testified that he used two full-sized sandwich bags and twenty-one corner cuts. Janisch used fold-over sandwich bags. (Tr. 9:30:28-9:34:34.) Janisch testified that with the lighting, there was reflection on the bags, similar to what was seen in Exhibit 27. (Tr. 9:34:38-9:35:05.)

9

Janisch testified that he took video from the right front quarter panel area of the vehicle, where Officer Fuerte had been standing, and took video with both the zoom off and with the zoom on. He recorded the glass jar on the front passenger side seat. (9:41:46-9:42:28.) Janisch testified that he was not able to substitute his observation as to what was visible from the outside of the jar for Officer Fuerte's observation and was simply trying to do his best recreation. (Tr. 10:00:35-10:00:52.) Janisch testified that he could not dispute Officer Fuerte's statement that the lighting underneath the canopy of the gas station helped illuminate the interior of the vehicle. (Tr. 10:18:48-10:19:22.)

## DISCUSSION

The Fourth Amendment protects persons against "unreasonable searches and seizures" and against arrests without probable cause. U.S. Const. Am. IV. However, a warrantless seizure of an object is justified under the plain view doctrine if: "'(1) the officer was lawfully present in the place from where he viewed the item, (2) the item was in plain view, and (3) its incriminating nature was 'immediately apparent.'" *United States v. Schmidt*, 700 F.3d 934, 938–39 (7th Cir. 2012) (quoting *United States v. Cellitti*, 387 F.3d 618, 623 (7th Cir. 2004)). "'For the incriminating nature to be immediately apparent, the officer must have probable cause to believe that the item is contraband or otherwise linked to criminal activity.'" *Id.* (quoting *Cellitti*, 387 F.3d at 624).

While the parties generally agree that probable cause to search Carr's vehicle turns on the plain view doctrine, the government makes several additional undeveloped arguments justifying the warrantless search. First, the government invokes both exigent circumstances and the automobile exception articulated in *United States v. Zahursky*, 580 F.3d 515 (7th Cir. 2009). Under the automobile exception, where there is probable cause to

10

Case 2:17-cr-00189-PP    Filed 03/15/18    Page 10 of 15    Document 30

believe that a vehicle contains contraband or evidence of a crime, law enforcement may conduct a warrantless search of the vehicle. *Id.* at 521. This analysis, however, still turns on Officer Fuerte's testimony that he observed marijuana in the glass jar on the front passenger seat of Carr's vehicle. As to exigent circumstances, beyond generally asserting a vehicle's mobility, the government does not articulate the exigency justifying the warrantless search.

The government also argues that the fact Carr fled from the scene "before the search got fully underway," provided probable cause for the warrantless search. (Gov't Br. at 5, Docket # 27.) As the government acknowledges, however, the search was underway at the time Carr fled. Officer Fuerte testified that after Carr was taken out of the vehicle and was talking with Officer Jackson, Officer Fuerte opened up the front passenger door and shined his flashlight under the seat, between the two seats, and had started to open up the center console. (Tr. 112-13.) Officer Fuerte testified that he had to stop the search because he heard that Carr fled. (Tr. 113.) Thus, because the search had already begun, Carr's subsequent flight cannot retroactively justify the search.

Returning then to the plain view doctrine, there is no dispute that Officer Fuerte was lawfully present in the place from where he viewed the jar and that the jar was in plain view, i.e., sitting uncovered on the front passenger seat. Thus, the question here is whether the incriminating nature of the jar was immediately apparent to Officer Fuerte. For the incriminating nature to be immediately apparent, Officer Fuerte must have had probable cause to believe that the jar was either contraband (or contained contraband) or was otherwise linked to criminal activity.

Officer Fuerte testified that he observed a green leafy substance in a jar on the front passenger seat of Carr's vehicle that he believed was marijuana. Carr argues that Officer

Fuerte's testimony that he observed a plant-like substance in the jar that he believed was marijuana is not credible. Carr argues that Officer Fuerte's ability to view the jar was compromised, pointing specifically to the fact that Officer Fuerte's body was facing away from the front windshield towards the gas pump and he had to turn his head to look back into the car through the front windshield; the fact the interior of the vehicle was not illuminated by the car's dome light; and the fact the windows were tinted, diminishing the light coming into the car from the side doors. Carr further argues the fact the jar was filled with twenty-three baggies obstructed Officer Fuerte's ability to see the plant-like substance inside the jar. Carr argues that the officers approached his vehicle to investigate an ordinance violation—excessively tinted windows—and the jar had nothing to do with the window tint.

I am not persuaded that it would have been impossible for Officer Fuerte to see marijuana in the jar as Carr argues. Although there is some dispute between the officers of whether the vehicle door was open or closed at the time Officer Fuerte made his observation (assuming that if the door was open the car's dome light would be on) and whether the gas station's canopy lights illuminated the interior of the vehicle, Officer Fuerte testified that he used the flashlight to illuminate the interior of the car. This was corroborated by the testimony of the other officers. Additionally, Officer Fuerte testified that he positioned his body close to the car to be able to see its interior through the front windshield which was not tinted.

Carr argues that "the evidence in this case . . . shows the officer could not have seen anything other than what we see in the picture the government presented: cellophane in a jar." (Def.'s Reply Br. at 1, Docket # 29.) I agree with Carr that the photographs entered

into evidence do not clearly show a green leafy plant-like substance in the jar. However, the question is not how the jar appears in the photograph, but whether Officer Fuerte would have been able to see what he suspects to be marijuana or contraband. I find that with the use of the flashlight and the manner in which Officer Fuerte positioned himself to look into the car via the untinted front windshield, he could have seen inside the jar and its contents. Accordingly, having seen what he believes to be marijuana in the jar, the incriminating nature of the jar was immediately apparent to Officer Fuerte.

Further, the old adage "actions speak louder than words" is instructive here. Officer Fuerte testified that seconds after making his observation he gestured to Officer Jackson, who was talking to Carr, to have Carr step out of the vehicle. This is corroborated by the other officers on the scene. Officer Jackson testified that Officer Fuerte gestured to him, and that he understood that to mean that "something's going on, that [Carr] has to get out of the car." (Tr. 160-61.) Officers Steszewski and Brandt similarly testified that Officer Fuerte gave Officer Jackson a hand signal and that they understood the signal to mean that Officer Fuerte wanted Carr to exit the vehicle. Specifically, Officer Steszewski testified that from working with Officer Fuerte, he understood the signal to mean that either Officer Fuerte saw something or that he wanted to speak to Carr. (Tr. 49.) This real time gesture by Officer Fuerte, which was corroborated by the other officers, lends credence to his testimony that he saw what he believed to be marijuana in the jar and reacted to it by signaling his colleagues.

Moreover, to have probable cause, Officer Fuerte need not be certain that the jar contained marijuana. Probable cause requires that the officer's belief be reasonable, not that it be correct. *Huff v. Reichert*, 744 F.3d 999, 1007 (7th Cir. 2014). Officer Fuerte testified not only that he used his flashlight to illuminate the jar, but that he had seen marijuana encased

13

in the same fashion as he observed in the jar in this case. Recall too that this is a jar stuffed with baggies/cellophane wrappers sitting on the front seat of a car. Carr does not contest that Officer Fuerte would have been able to see the cellophane in the jar. Admittedly, it may be unreasonable for an officer, despite having previously seen marijuana packaged in a similar fashion as in this case, to believe that a jar sitting on a kitchen counter stuffed with cellophane wrapper without any other indicia of criminal activity would likely contain contraband. On the other hand, it is reasonable for an officer to believe that the jar identically packaged on the front seat of a car likely contained evidence of criminal activity, notably possession of controlled substances or dealing in controlled substance. To be clear, a jar in itself is not contraband or evidence of criminal activity. But a jar stuffed with cellophane sitting on a front seat of a car may reasonably appear to a police officer as likely to contain contraband. Again, for probable cause, Officer Fuerte need not have been correct or certain of his belief that the jar contained marijuana. His belief need only be reasonable. On the record before me, I find it not only credible that Officer Fuerte could have seen what he believed to be marijuana in the jar, I also find it reasonable for Officer Fuerte to believe a jar with the baggies/cellophane wrappers on a front car seat likely contained contraband.

Finally, it is important to note that while the window tint investigation brought the officers to the vehicle, it was Officer Fuerte's observation of the jar containing suspected contraband that invokes the plain view doctrine. Under the plain view doctrine, the officer must have probable cause to believe that the item is contraband or otherwise linked to criminal activity. The item need not be specifically linked to the ordinance violation the officers were initially investigating.

14
Case 2:17-cr-00189-PP   Filed 03/15/18   Page 14 of 15   Document 30

For these reasons, I find that the plain view doctrine authorized the search of the car and recommend that Carr's motion to suppress be denied.

**NOW, THEREFORE, IT IS RECOMMENDED** that the defendant's motion to suppress evidence (Docket # 10) be **DENIED**.

Your attention is directed to General L.R. 72(c), 28 U.S.C. § 636(b)(1)(B) and Federal Rules of Criminal Procedure 59(b), or Federal Rules of Civil Procedure 72(b) if applicable, whereby written objections to any recommendation or order herein, or part thereof, may be filed within fourteen days of the date of service of this recommendation or order. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to file a timely objection with the district court shall result in a waiver of a party's right to appeal. If no response or reply will be filed, please notify the Court in writing.

Dated at Milwaukee, Wisconsin this 15th day of March, 2018.

BY THE COURT

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge