UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

          Plaintiff,

    v.                                      Case No. 17-cr-189-pp

DOMINIQUE CARR,

          Defendant.

## ORDER OVERRULING DEFENDANT'S OBJECTION (DKT. NO. 32), ADOPTING MAGISTRATE JUDGE JOSEPH'S REPORT AND RECOMMENDATION (DKT. NO. 30), AND DENYING DEFENDANT'S ORIGINAL AND RENEWED MOTIONS TO SUPRESS (DKT. NO. 10, 25)

On November 7, 2017, the grand jury returned a three-count indictment charging the defendant with marijuana possession, firearm possession and possessing a firearm in furtherance of a drug offense. Dkt. No. 1. The defendant filed a motion to suppress evidence and requested an evidentiary hearing. Dkt. No. 10. Magistrate Judge Nancy Joseph conducted an evidentiary hearing on January 11, 2018 and took additional evidence eleven days later, on January 22, 2018. Dkt. Nos. 21-22. Post-hearing, the defendant renewed his motion to suppress evidence, arguing that law enforcement improperly relied on the plain view doctrine to search the defendant's vehicle. Dkt. No. 25.

On March 15, 2018, Judge Joseph issued a report, recommending that this court deny the defendant's motion because the plain view doctrine authorized the search of the car. Dkt. No. 30. The defendant timely objected,

1

arguing that Judge Joseph should not have found Officer Fuerte's testimony credible, and asking this court to conduct a *de novo* evidentiary hearing. Dkt. No. 32. The court granted the request, limiting the scope of the hearing to Fuerte's testimony, dkt. no. 44, and on June 13, 2018, the court took testimony from Fuerte, dkt. no. 45.

The court will overrule the defendant's objections, adopt Judge Joseph's recommendation and deny the defendant's motion to suppress the evidence.

## I.    STANDARD OF REVIEW

Rule 59(b) governs the referral of motions to suppress to magistrate judges. Fed. R. Crim. P. 59(b). Parties have fourteen days to file "specific written objections" to a magistrate judge's report and recommendation on a motion to suppress evidence. Fed. R. Crim P. 59(b)(2). When reviewing a magistrate judge's recommendation, the district judge must review *de novo* the recommendations of the magistrate judge to which a party timely objects. 28 U.S.C. §636(b)(1); Fed. R. Crim. P. 59(b)(2), (3). The court can "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. §636(b)(1).

## II.   BACKGROUND

### A.    Procedural History

In his motion to suppress, the defendant argued that the officer who observed the inside of the defendant's car—Officer Andrew Fuerte—improperly invoked the plain view doctrine to search the defendant's car. Dkt. No. 10. The defendant requested an evidentiary hearing "to determine the conditions of the

Officer's observations." Id. The government responded, proposing a larger scope for the evidentiary hearing, stating that it wished to present the "broader question in this case (the police rationale for approaching the defendant's vehicle while it was in one of the lanes of the gas station, due to window tint issue)[.]" Dkt. No. 11. On December 7, 2017, Judge Joseph granted the defendant's request for an evidentiary hearing, dkt. no. 12, and after an adjournment, took testimony on January 11, 2018.

Milwaukee Police Officers Jessie Busshardt, Mark Staszewski, Eric Brandt, Andrew Fuerte and Matthew Jackson testified at the January 11, 2018 hearing. Dkt. No. 24. The parties also offered photo exhibits and video footage from the officers' body cameras. Id. At the adjourned hearing on January 22, 2018, the defendant presented testimony from David Janisch, an investigator and former police officer for the Cities of Waukesha and Viroqua. Mr. Janisch attempted to recreate the conditions under which Fuerte made his observations. Dkt. No. 22.

Judge Joseph asked for post-hearing briefing; the defendant renewed his motion to dismiss on February 2, 2018. Dkt. No. 25.

B.     Arguments to Judge Joseph

The defendant's renewed motion to suppress succinctly stated the factual question:

> Balancing on his bicycle, while at a gas station on a summer night, Officer Andrew Fuerte peered back into a parked car. Despite sitting at a strange angle, Officer Fuerte spotted a glass jar filled with cellophane. The Officer claims that even at this odd angle, at night, while looking through a windshield, he could spot marijuana hidden among the

3

> cellophane in a four inch jar. But a picture taken of the jar
> *inside the vehicle* shows that this wasn't possible. Officer
> Fuerte could not have seen anything but plastic, and merely
> made a guess about what the jar contained.

Dkt. No. 25 at 1.

From a legal standpoint, the defendant argued that the reason the officers approached the defendant was because they though his car windows were illegally tinted. <u>Id.</u> at 6. The defendant argued that seeing a jar on the front seat of the car "had nothing to do with window tint." <u>Id.</u> at 7. He argues that the officers would have had probable cause to conduct the search they eventually conducted only if they had evidence that the jar "was linked to criminal activity." <u>Id.</u> He asserts that Fuerte could not have seen marijuana inside the jar, and thus—contrary to Fuerte's testimony—that Fuerte did not have a link between the jar and any criminal activity. <u>Id.</u>

The government responded that one could not separate Fuerte's viewing of the jar full of cellophane outside of a larger context. Dkt. No. 27. The government pointed to Fuerte's experience recognizing marijuana during his years as a police officer; the fact that he had discovered marijuana at that same location—the gas station—on other occasions; and the fact that Fuerte knew that other drug dealers used similar packaging—cellophane inside of glass jars—to package drugs. <u>Id.</u> at 3.

C.    <u>Judge Joseph's Report and Recommendation (Dkt. No. 30)</u>

On March 15, 2018, Judge Joseph recommended that this court deny the motion to suppress. Dkt. No. 30. She recounted the facts elicited during the January 11, 2018 hearing and summarized the testimony of Officers Fuerte,

Jackson, Staszewski and Brandt as well as the testimony of former officer Janisch. Id. at 2-10. Judge Joseph decided not to address the testimony of Officer Jesse Busshardt, "because he was not present at the scene during the relevant time period." Id. at 2.

Before analyzing the parties' arguments on the applicability of the plain view doctrine, Judge Joseph discounted the government's "undeveloped arguments" that the automobile and exigent circumstances exceptions justified the warrantless search. Id. at 10 (noting that these exceptions are articulated in United States v. Zahursky, 580 F.3d 515 (7th Cir. 2009)). She found that the application of these doctrines "still turn[ed] on Officer Fuerte's testimony that he observed marijuana in the glass jar on the front passenger seat of Carr's vehicle." Id. at 11. Judge Joseph also indicated that she would not use the defendant's unprovoked flight from the scene as a factor in her probable cause analysis, because testimony at the evidentiary hearing established that the search already had begun by the time the defendant fled: "[The defendant]'s subsequent flight cannot retroactively justify the search." Id.

Turning to the plain view doctrine, Judge Joseph observed that "there is no dispute that Officer Fuerte was lawfully present in the place from where he viewed the jar and that the jar was in plain view, i.e., sitting uncovered on the front passenger seat." Id. As to whether the incriminating nature of the jar was immediately apparent to Fuerte, Judge Joseph concluded that she was "not persuaded that it would have been impossible for Officer Fuerte to see marijuana in the jar[.]" Id. at 12. By using his flashlight and leaning over the

vehicle, Judge Joseph found that Fuerte could have seen the jar clearly enough that "the incriminating nature of the jar was immediately apparent to Officer Fuerte." Id. at 13.

While Judge Joseph "agree[d] with [the defendant] that the photographs entered into evidence do not clearly show a green leafy plant-like substance in the jar," she commented that the relevant question was "whether Officer Fuerte would have been able to see what he suspects to be marijuana or contraband." Id. at 12-13. She further explained that Fuerte's real-time gesture to have the defendant exit the car "len[t] credence to his testimony that he saw what he believed to be marijuana in the jar and reacted to it by signaling his colleagues." Id.

Finally, Judge Joseph observed that Fuerte needed probable cause only to believe that the jar was immediately incriminating, and probable cause, in turn, required only that the officer's belief be reasonable. Judge Joseph relied on Fuerte's testimony that he had seen marijuana packaged in the same fashion as what he saw on the front seat of the defendant's car. Id. at 14. Judge Joseph also stressed that while a jar itself may not be contraband, and that a jar sitting on a kitchen counter might not be immediately incriminating, it could still be reasonable for an officer to believe that a jar sitting on the front seat of a car—and packaged consistently with others that Fuerte had observed to contain marijuana—likely contained evidence of criminal activity. Id. In sum, Judge Joseph found it "not only credible that Officer Fuerte could have seen what he believed to be marijuana in the jar, [but] also [] reasonable for Officer

Fuerte to believe a jar with the baggies/cellophane wrappers on a front car seat likely contained contraband." Id. at 14.

D.      Objections to the Report and Recommendation

In his objection to Judge Joseph's report and recommendation, the defendant argued that the question before the court was narrow: whether the incriminating nature of the jar was immediately apparent to Fuerte. Dkt. No. 32 at 2. Accordingly, the defendant asked this court to hold a *de novo* evidentiary hearing to determine Fuerte's credibility. Id.

Specifically, the defendant argued that Fuerte's brief observation while "balancing on his bike, outside the car, while looking back into the front windshield," could not have given him the immediate belief that the jar contained marijuana. Id. The defendant objected to the portion of Judge Joseph's recommendation where she found that Fuerte "could have" seen the contents of the jar. Id. at 3 (citing Dkt No. 30 at 13). He argued that: (1) the officer's viewing conditions were "significantly less favorable than the person taking the picture inside the car;" (2) aside from officer Fuerte's word, there was no other corroborating evidence; (3) the baggies inside the jar reflected the light and created an obstruction to viewing the jar's contents; (4) the defense witness's recreation of the scene demonstrated the difficulty in observing the contents of the jar; and (5) "the photograph of the jar taken the night of the arrest contradict[ed] what Fuerte claims, because as the magistrate judge found, it 'does not clearly show a green leafy plant-li[k]e substance.'" Id. at 3 (citing dkt. no. 30 at 13).

The defendant argued that the only thing Fuerte could have observed was a jar full of cellophane, and he argues that such an observation would not constitute probable cause. Dkt. No. 32 at 7. In support, the defendant cited and distinguished three Seventh Circuit cases which upheld the application of the plain view doctrine in situations where the officer's view of the object was obstructed, or in which the items viewed were not inherently contraband. Dkt. No. 32 at 5-6 (citing United States v. Porales, 52 F. App'x 290, 292-93 (7th Cir. 2002); United States v. Schmidt, 700 F.3d 934, 939 (7th Cir. 2012); and United States v. Denny, 771 F.2d 318, 322 (7th Cir. 1985)).

The government responded that Judge Joseph appropriately analyzed the three prongs of the plain view doctrine under United States v. Schmidt, 700 F.3d 934, 939 (7th Cir. 2012). It emphasized that Fuerte was an experienced officer who reasonably could have concluded that the jar contained marijuana because: (1) the car in which it was located was in a high-crime area; (2) Fuerte used a flashlight to look through the defendant's un-tinted front windshield to see the jar; (3) the gas station canopy and vehicle interior lights aided Fuerte's view; (4) Fuerte previously had observed marijuana packaged in the same fashion; and (5) Fuerte had knowledge that drug deals "sometime[s] take place quickly in settings and under circumstances such as those present that evening[.]" Dkt. No. 37 at 5. The government stressed that the court must consider the reasonableness of Fuerte's judgment, citing Huff v. Reichert, 744 F.3d 999, 1007 (7th Cir. 2014).

The defendant's reply attacked the government's assertion that the defendant's behavior at the gas station could warrant suspicion of a drug offense. Dkt. No. 38 at 2 (citing United States v. Black, 707 F.3d 531, 539 (4th Cir. 2014)). The defendant argued that Fuerte needed more than a suspicion that the jar contained contraband, claiming that while the jar may have been suspicious, Fuerte could not have developed probable cause. Id. at 3. In support of this contention, the defendant cited United States v. Guzman-Cornejo, 620 F.Supp.2d 917, 923 (N.D. Ill. 2009), where the defendant claimed that another district court judge "held that the plain view doctrine didn't apply because a man of reasonable caution could only have *suspected* that the items inside the black sock and sandwich bag box were a gun and drugs." Dkt. No. 38 at 3-4. The defendant asserted that in this case, because the officers lacked indicia of a drug violation when they approached the car and because the marijuana was not visible in the jar, Fuerte had only a suspicion about the jar. Id. at 4.

The reply brief also argued that this court's evidentiary hearing "should be limited to officer Fuerte, as [the defendant] is challenging only that officer's observations." Id. at 4, n. 2. Because the government did not have a chance to respond to that proposal, the court asked the parties to submit a joint statement concerning the scope of an evidentiary hearing. Dkt. No. 41. The parties could not come to an agreement; the defendant proposed that the court hear only Fuerte's testimony, dkt. no. 43, while the government proposed that the court hear all of the witnesses who'd testified before Judge Joseph, dkt. no.

42. Via text-only order, the court declined the government's invitation, indicating that it would take the testimony only of Fuerte. Dkt. No. 44. The court indicated that while it agreed with the government as to the relevance of other witnesses, it would rely on the transcript of the January 11, 2018 or, if necessary, could set another hearing for further witnesses. Id.

## III. FACTS

### A. January 11, 2018 Testimony

The court will use Judge Joseph's summaries, together with the transcript of the January 11, evidentiary hearing, to recount the context of Fuerte's observations.

#### 1. Officer Matthew Jackson

Officer Jackson has been an officer with the Milwaukee Police Department for four years. Id. He testified that on the evening of August 3, 2017, he was on bicycle patrol duty with Officers Staszewski, Brandt and Fuerte. Dkt. No. 24 at 147. Around 9:44 p.m., the four officers were conducting a routine patrol in the areas surrounding the 2600 block of West Capitol Drive, because that area is a high-crime area. Id. at 149. While on patrol, Jackson saw a vehicle with "pretty darkly tinted" windows parked at a gas pump at the gas station at 2620 West Capitol Drive. Dkt. No. 24 at 150.

Jackson said that he approached the car because of its tinted windows, and because it was "just part of [his] daily job. . . to go check businesses, look for people that are loitering, look for people that are selling drugs." Id. at 152-53. He rode up on his bicycle and placed his foot up against the gas pump,

while Officers Brandt and Fuerte rode their bicycles to the passenger side of the car. Id. at 154. Jackson testified that he remembered Fuerte looking through the front windshield of the car with the assistance of a flashlight in his hand. Id. at 155. As Fuerte looked into the car, Jackson saw the car door open, and Jackson and the defendant spoke briefly. Id. at 158.

Jackson said that as the defendant was "about to step out of the car[,]" Fuerte made a hand gesture to Jackson, which Jackson interpreted to mean that he should require the defendant to step out of the car. Id. at 160. The defendant got out of the car, and Jackson testified that after he ordered the defendant to move to the back of the car, the defendant fled on foot. Id at 165.

### 2. Officer Mark Staszewski

Officer Staszewski has worked as a police officer with the Milwaukee Police Department for about four years. On the evening of August 3, 2017, he performed bike unit patrol around 2620 West Capitol Drive in Milwaukee. Id. at 32. He testified that he and three other officers—Jackson, Fuerte and Brandt—had not been dispatched to that area for a specific call, but rather were performing routine patrol because "it's a high-crime area, it's a patrol area." Id. at 33.

Staszewski testified that the officers had been heading south on 27th Street when they stopped at a red light at the intersection of 27th Street and West Capitol Drive. Id. at 34. He said that the officers observed a vehicle sitting at a gas station near the intersection, and that the car remained sitting at the gas station for the duration of the red light without anyone getting in or out of

11

the vehicle. Id. at 34-35. Staszewski testified that because they were in a high-crime area, when the officers observed a vehicle sitting at a gas station for a period of time without anyone getting out to pump gas, they went to see "if everything was okay with that vehicle, if anything was going on with that vehicle." Id. at 35.

Staszewski recalled that all four officers directed their bicycles toward the car, and that Jackson approached the gas pump on the driver's side of the vehicle while Officers Fuerte and Brandt stationed themselves near the front passenger side of the car. Id. at 36. Staszewski arrived last, at the back of the car. Id. From approximately ten or fifteen feet from the car, Staszewski saw Fuerte looking into the windshield of the vehicle, and saw the driver's door open. Id. at 40. Staszewski testified that he saw Fuerte making a "thumbs up" motion before the defendant left the vehicle, and recalled that Fuerte held a flashlight in his hand as he looked through the windshield. Id. at 46. Staszewski could "see the light illuminating the inside of the vehicle." Id. While he was radioing into dispatch about stopping a vehicle at a gas station, Staszewski saw the defendant run from the vehicle.

### 3. Officer Eric Brandt

Officer Brandt has worked as a police officer for about three and one half years. Id. at 54. He testified that on August 3, 2017, he worked on a bicycle patrol team with Fuerte, Staszewski and Jackson, and that the four of them visited 2620 West Capitol Drive at around 9:44 p.m. that evening. Id. at 55-56.

12

He recalled that the bike patrol unit approached a car sitting at a gas pump of a gas station. Id.

Brandt viewed the scene from "right in front of the motor vehicle just off to the passenger side." Id. at 58. He testified that he saw Fuerte near the front passenger door of the car, holding a flashlight, and looking through the windshield at the interior of the car. Id. at 57-59. He also saw Jackson talking with the defendant. Id. at 59. Brandt testified that while the defendant and Jackson were talking, he saw Fuerte give Jackson a hand indication to have the defendant step out of the car. Id. at 62-63. Brandt did not see the jar from the front passenger headlight area and did not smell any marijuana at the scene. Id. at 68.

B.     January 22, 2018 Testimony

On January 22, 2018, Judge Joseph took testimony from defense witness David Janisch. Dkt. No. 30 at 8. Janisch is an investigator and a former Waukesha and Viroqua police officer. Id. Federal Defender Services hired Janisch to review police documents and recordings in order to re-create the scene where the officers approached the defendant's car. Id. Janisch testified that on January 18, 2018 at about 5:30 p.m., he drove to 2620 West Capitol Drive in his grey Honda Accord. Id. It was dark and Janisch parked next to pump four, which he had determined to be the same pump at which the defendant had stopped. Id. at 9.

Jansich described how he recreated the glass jar taken from the defendant's vehicle. Id. at 9. As Judge Joseph put it:

Janisch testified that after reviewing the police reports he learned that there had been a sandwich-type clear plastic bag in the jar that contained twenty corner-cuts of plastic bags that were knotted at the top that contained green vegetable material. Janisch testified that for the recreation, he packaged twenty bags in a similar fashion using parsley flakes and packaged a separate corner-cut containing parsley flakes and placed the items into a clear plastic sandwich-type bag. Janisch summarized that inside of the one plastic bag there was a sandwich bag containing twenty corner-cuts and one separate corner-cut, for a total of twenty-three plastic bags inside of the jar. Janisch testified that he used two full-sized sandwich bags and twenty-one corner cuts. Janisch used fold-over sandwich bags.

Id. at 9 (internal citations to the January 22, 2018 audio recording omitted).

Janisch testified that after creating his version of the glass jar, he took video from the right front quarter panel of the car and recorded the glass jar on the front passenger side seat. Id. Judge Joseph's summation of Janisch's testimony concluded by noting that,

Janisch testified that he was not able to substitute his observation as to what was visible from the outside of the jar for Officer Fuerte's observation and was simply trying to do his best recreation. Janisch testified that he could not dispute Officer Fuerte's statement that the lighting underneath the canopy of the gas station helped illuminate the interior of the vehicle.

Id. at 10 (internal citations to the January 22, 2018 audio recording omitted).

C.    June 13, 2018 Testimony

At the hearing before this court, Fuerte testified that he'd ridden his bicycle to the passenger side of the defendant's car. He told the court that his bike had rolled up next to the passenger-side door, a bit past that door and up near the right, front headlight. He looked back over his shoulder, through the front windshield of the car. He indicated that he noticed a cigarillo wrapper, of the type used to wrap blunts, in the ashtray in the front console of the car. He

also saw the glass jar on the seat, containing the cellophane and marijuana. He then moved back to the passenger door, to get a better look through the front windshield, and used his flashlight. At the point he looked through the windshield with his flashlight, he was about a foot away from the car. With regard to particular details, Fuerte testified that the car had a sunroof, and that it was partially open. The car was parked under the canopy that covers the gas pumps, and the lights of that canopy were on. He also testified that when the defendant opened the car door, the lighting inside the car became a bit brighter.

The government introduced a series of still photographs taken from Staszewski's body camera. Exhibits 32A through 32D. The photos show Fuerte's head above the front passenger door of the car, looking down into the passenger side. He appears to be standing (or perhaps sitting on his bicycle seat) right up against the passenger door.

## V.    ANALYSIS

The Fourth Amendment protects against unreasonable searches and seizures. U.S. CONST. amend IV. Without a warrant, searches and seizures are presumptively unreasonable, "'subject only to a few specifically and well-delineated exceptions.'" Mincey v. Ariz., 437 U.S. 385, 390 (1978) (quoting Katz v. United States, 389 U.S. 347, 357 (1967)). One such "well established exception" is known as the "plain view doctrine," which provides that "'under certain circumstances the police may seize evidence in plain view without a warrant.'" Horton v. Cal., 496 U.S. 128, 134 (1990) (quoting Coolidge v. N.H.,

403 U.S. 443, 465 (1971)). "[I]f, while lawfully engaged in an activity in a particular place, police officers perceive a suspicious object, they may seize it immediately." Tex. v. Brown, 460 U.S. 730, 739 (1983).

In the Seventh Circuit, courts used a three-pronged approach in determining whether to apply the plain-view doctrine: "A warrantless seizure of an object is justified if: "'(1) the officer was lawfully present in the place from where he viewed the item, (2) the item was in plain view, and (3) its incriminating nature was immediately apparent.'" United States v. Schmidt, 700 F.3d 934, 938-939 (7th Cir. 2012) (quoting United States v. Cellitti, 387 F.3d 618, 623 (7th Cir. 2004)).

Judge Joseph had no question that the government had met the first two prongs of the Schmidt test: Fuerte was lawfully present where he viewed the jar, and the jar sat in plain view on the front passenger seat of the defendant's vehicle. Dkt. No. 30 at 11. The defendant did not object to that determination, and the court has no reason to find otherwise. The defendant disputes the third prong: whether the incriminating nature of the jar was immediately apparent.

"For the incriminating nature [of an object] to be immediately apparent, the officer must have probable cause to believe that the item is contraband or otherwise linked to criminal activity.'" Schmidt, 700 F.3d at 393 (quoting Cellitti, 387 F.3d at 624). "[O]fficers may have probable cause to seize an ordinarily innocuous object when the context of an investigation casts that item in a suspicious light." Celitti, 387 F.3d at 623-34 (citing cases). Even if an

item is "perfectly lawful" for a defendant to have in his possession, that does not bar a court from applying the plain view doctrine. United States v. Raney, 342 F.3d 551, 559 (7th Cir. 2003). As to "immediacy," the Seventh Circuit has said that it "does 'not interpret the "immediately apparent" requirement to connote apparent at first glance, but rather, apparent without other information than that which the officers properly possessed before their search was over.'" United States v. McDonald, 723 F.2d 1288, 1295 (7th Cir. 1983) (quoting United States v. Thomas, 676 F.2d 239, 244 (7th Cir. 1980)).

In his objection to Judge Joseph's report, and in his oral arguments at the hearing before this court, the defendant spent his time focusing on the instant that Fuerte testified that he saw the jar. In the objection, the defendant stated, "Officer Fuerte confirmed that when he made his observation of the jar at a gas station on a summer night, he was balancing on his bicycle, and looking back into Carr's front windshield." Dkt. No. 32 at 2. The defendant contrasted the ability Fuerte would have had to observe during this fleeting, awkward contact with the photo officers took of the jar after the fact—a photo that the defendant contends shows only a jar filled with plastic.

This argument makes too much of the "immediately" in "immediately incriminating." It ignores the fact that Fuerte testified—and the still photos introduced at the evidentiary hearing show—that after this fleeting glance, Fuerte backed up to the passenger door of the car, and looked directly inside, using his flashlight to illuminate the jar on the front seat. Fuerte's entire

observation did not occur while he was balancing on his bike and looking backward; that was only part of the opportunity he had to see the jar.

The defendant also argues that the baggies would have reflected light, obstructing Fuerte's ability to see what was inside of them. Dkt. No. 32 at 3. He bases this argument on the photo that the officers took of the jar after the fact, arguing that because the baggies appear to reflect light in that photo, they must have done when Fuerte viewed them. The defendant also argues that when he looks at that photo, he can't see any green, leafy substance, and that Judge Joseph couldn't either. Id. This argument ignores Fuerte's testimony. Fuerte testified—before Judge Joseph, and before this court—that reflected light did not obstruct his view, and that he was able to see marijuana in the jar. The defendant insists that this could not be possible because of the photo in Exhibit 27. But that photo is not an accurate representation of what Fuerte saw. Fuerte saw the jar through the window, with the canopy light leaking into the sun roof and the direct aid of his flashlight. And he testified that he saw marijuana.

As the government argued, the defendant's arguments also ignore the fact that Fuerte was in a high-crime area when he viewed the jar, and that he had seen marijuana packaged that way before. He was not viewing a glass jar with lots of little pieces of plastic in it in a vacuum. He was viewing that item in a context. That leads to Judge Joseph's observation that if Fuerte had seen a jar sitting on a kitchen counter, it might not have been immediately incriminating. But he saw it in a high-crime area, in a car with darkly-tinted

windows that had been sitting at the gas pump for a while with no activity, on the front seat next to the driver, having seen drugs packaged the same way in the past.

In determining whether an item is "immediately incriminating," context matters. The Seventh Circuit has found that shotgun shells were "immediately incriminating" in the context of an armed bank robbery investigation. See United States v. Bruce, 109 F.3d 323, 328-29 (7th Cir. 1997). It has found that an empty ammunition box was suspicious when it was found in a suspected drug dealer's apartment. See United States v. Cooper, 19 F.3d 1154, 1163 (7th Cir. 1994). It found that a large amount of cash was suspicious when discovered on a man who'd recently sold drugs to an undercover officer. See United States v. Cervantes, 19 F.3d 1151, 1153 (7th Cir. 1994). And in contrast, it could not conclude that a set of keys that officers found while searching a house for a rifle were "immediately incriminating," because the link between such a seemingly innocuous item and any criminal activity was too attenuated. Cellitti, 387 F.3d at 624.

In view of these cases, and this reasoning, had Fuerte testified only that he had seen a glass jar containing a number of small pieces of plastic, *that* may well have been immediately incriminating. Looking again at the high crime area, the fact that the defendant's car had illegally tinted windows, the fact that the gas station was a known location for drug deals, the fact that the defendant had been sitting there awhile without pumping gas or going into the station, the presence of a glass jar of plastic baggie cuts, standing alone, went from

19

innocuous to suspicious. But Fuerte testified that he saw marijuana. And the court does not find convincing the defendant's arguments that that testimony could not possibly be true.

The court also notes that the defendant has relied heavily on United States v. Guzman-Cornejo, 620 F.Supp.2d 917, 922 (N.D. Ill. 2009), to argue that

> the court must not evaluate whether the incriminating nature of an item is immediately apparent from the viewpoint of a law enforcement officer with extensive training and experience. Rather, the court is required to determine whether "the facts available to the officer would warrant a man of reasonable caution in the belief that certain items may be contraband or stolen property or useful as evidence of a crime."

Id. at 922 (quoting Tex. v. Brown, 460, U.S. 730, 742 (1983)). As the court noted at the evidentiary hearing, this argument, and the reasoning in the case, do not square with established Seventh Circuit law. The Seventh Circuit has held that "[i]n making probable-cause determinations, law enforcement agents are entitled to draw reasonable inferences from the facts before them, based on their training and experience." United States v. Funches, 327 F.3d 582, 586 (7th Cir. 2003) (citing United States v. Carrillo, 269 F.3d 761, 766 (7th Cir. 2001)). The court does not find Guzman-Cornejo persuasive.

This court finds that Fuerte had a better opportunity to observe the jar than the defense claims that he did. The court finds Fuerte's testimony that he saw marijuana in the jar to be credible. The court will adopt Judge Joseph's recommendation, and will deny the motion to suppress. The court's staff will contact the parties to set up a scheduling conference to discuss next steps.

## V.    CONCLUSION

The court **OVERRULES** the defendant's objection. Dkt. No. 32.

The court **ADOPTS** Magistrate Judge Joseph's Report and Recommendation. Dkt. No. 30.

The court **DENIES** the defendant's motions to suppress. Dkt. No. 10, 25.

Dated in Milwaukee, Wisconsin this 25th day of June, 2018.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**